344 So.2d 75 (1977)
Ele Waylan PEARCE
v.
Maxine Bailey, wife of Ele Waylan PEARCE.
No. 8188.
Court of Appeal of Louisiana, Fourth Circuit.
March 16, 1977.
Rehearing Denied April 13, 1977.
Writ Granted June 2, 1977.
*76 Garland R. Rolling, Metairie, for plaintiff-appellee.
John H. Wells, Wells & Breaux, New Orleans, for defendant-appellant.
Before REDMANN, LEMMON, GULOTTA, STOULIG and MORIAL, JJ.
REDMANN, Judge.
The real issue in this appeal from a post-no-fault-divorce alimony award is whether an apparently alcoholic and perhaps menopausal wife, whose continual drunken misbehavior makes living with her insupportable, is at "fault" within La.C.C. 160 so as to deny her alimony.
We deem it not an issue whether the trial judge disbelieved the testimony by the exhusband and by the couple's major daughter which detailed the ex-wife's misbehavior, and believed instead the ex-wife's testimony that, with the then help of Alcoholics Anonymous which she no longer needs, she had overcome her alcohol problem 15 years before the marital break-up. This is not an issue because the trial judge never gave any hint that he disbelieved the ex-husband and, especially, the daughter: and to disbelieve the daughter would brand her an abominable liar, one who vilifies her mother to help her father evade an alimony obligation arising from a marriage of 20-odd years. Furthermore, the daughter in testimony appears almost sympathetic towards, and not condemnatory of, her mother. The daughter is a registered nurse, and spoke understandingly of her mother's alcohol problem: she felt her mother was ill. In the absence of an express declaration by the trial judge that he rejected the daughter's testimony as a charade, we conclude that the trial judge did not disbelieve her testimony (or that of the ex-husband). Had the trial judge deemed the daughter so wanton a liar, he would not have described this as "a very close case, really, and an unfortunate case."[1]
We see closeness in the question whether an alcoholic is at "fault" for his drunkenness. If alcoholism is an illness, the alcoholic is no more responsible for his illness than is the diabetic or the hemophiliac. Yet legion are alcoholics who do not drink alcohol, and thus avoid drunkenness. Thus it may, with considerable logic, be said that the sober alcoholic who begins to drink alcohol is at fault in doing so because he knows that he cannot drink in moderation.
We see no closeness in the possible question whether a menopausal wife is at fault for misbehavior caused by menopause. (Defendant ex-wife is of menopausal age, and her ex-husband's description "impossible *77 to get along with" is suggestive of menopausal problems.) A wife who has behaved supportably well over many years of marriage cannot be fairly denied alimony because menopause during the last year or two makes living with her difficult or evenin the view of a husband who may have his own problemsinsupportable. The law cannot blind itself to the comparative involuntariness of menopausal misbehavior. It is not a wife's "fault" that menopause afflicts her and, through her, her husband.
The evidence before us establishes that the wife's habitual intemperance made living with her insupportable (prima facie, grounds for separation under C.C. 138(3)), but it also suggests that the wife's responsibility for her misbehavior is diminished by the illness of alcoholism and possibly menopause (and is conceivably, therefore, not grounds for separation). The lay evidence might suffice to establish the wife's alcoholism, but alcoholism per se cannot exculpate a spouse for continual drunken misbehavior. However, we decline to equate drunkenness from alcoholism with the "habitual intemperance" of C.C. 138(3) and thus (see Fulmer v. Fulmer, La.1974, 301 So.2d 622) make it "fault" within C.C. 160 in every case. Although the lay evidence here does not suffice to establish it, we suppose it possible that a wife's individual condition of alcoholism, especially if aggravated by other circumstances such as menopause, could so greatly diminish her responsibility that she should be deemed without fault for purposes of post-divorce alimony under C.C. 160 (as well as for purposes of C.C. 138(3), although that question is not here involved).
That possibility is suggested, though not proven, in our case.
Because the initial determination of fault has life-long consequences, we conclude that the just disposition of this case, C.C.P. 2164, is to set aside the award of alimony and to remand to enable the wife to present (perhaps from her family doctor or gynecologist, or from a psychologist or psychiatrist) expert evidence of the extent to which her alcoholism and other factors reduce her culpability.
The ultimate question is whether the wife's misbehavior was fairly her "fault" within C.C. 160, in the "general and popular use of the words," C.C. 14.
Because we remand we do not review quantum. We do, nevertheless, note that Ward v. Ward, La.1976, 339 So.2d 839, rules that the ex-wife's earning potential is not a factor.
Remanded.
GULOTTA, Judge, dissenting.
I view this matter as one involving primarily a burden-of-proof question. It is incumbent upon the wife to show her freedom from fault if she is to receive alimony. Although the trial judge did not assign reasons for judgment, the fact that he awarded alimony is based on a finding of the wife's freedom from fault. When the evidence is taken as a whole, i. e., the testimony of the parties and particularly the daughter, a registered nurse who resided with her parents, it is clear that a prima facie showing was made by the wife that the drinking resulted from alcoholism. In this respect, the daughter, though not a psychiatric medical expert, testified that her mother's drinking problem is an illness.
I am not in agreement with the majority decree ordering the remand. The decree places upon a practically destitute wife of 25 years, the difficult, if not impossible, burden of obtaining psychiatric medical evidence. The husband's task, in this regard, would not be nearly as difficult. His net earnings amount to over $1,000.00 per month, and he resides with the daughter and her mechanical engineer husband. I dissent from the majority decree and would award alimony to the wife in the sum of $250.00 per month.
STOULIG, Judge, dissenting.
I respectfully dissent.
At the time the divorce action was instituted the parties had been married for more than 28 years, 24 of which they resided *78 together as man and wife before they physically separated. Mrs. Pearce obtained a judgment of separation from bed and board on June 14, 1972, predicated on living separate and apart from her husband for more than one year. Subsequently Mr. Pearce filed this divorce action on October 2, 1975, based upon nonreconciliation of the parties and the elapse of more than one year and 60 days from the finality of the judgment of separation.
The trial judge did not render findings of fact when awarding Mrs. Pearce $100 per month post-divorce alimony out of defendant's average monthly gross earnings of $1,600. From the record I may assume the trial judge based his award of alimony on either of these factual findings: (1) he accepted Mrs. Pearce's testimony that since joining Alcoholics Anonymous 15 years ago she did not drink; or (2) that he believed the statements by Mr. Pearce and their daughter that defendant drank heavily but concluded the cause was psychological and this would not constitute fault sufficient to deprive her of the right to permanent alimony. (C.C. art. 160.) As did the majority, I too speculate as to what conclusions of fact the trial judge made; however, the evidence reasonably suggests either of the above conclusions.
There is no testimony whatsoever to suggest menopausal unpredictability and both the husband and daughter of Mrs. Pearce stated they never saw her take a drink within recent years. The majority's reference to "continual drunken misbehavior" is therefore surprising. The testimony of the daughter is adverse to her mother and the record suggests a reason for her hostility might be that the mother disapproved of her daughter's choice of a husband.
For this court to indulge in speculation not based on evidence in the record violates basic rules of appellate review. When a trial judge views witnesses he has the opportunity to judge their veracity and reliability. This is why great weight should be accorded his judgments. His is a three-dimensional view while our evaluation of testimony is from the limited vantage point of the written word. With respect to finding of fault the judgment of the trial court should be affirmed.
I am convinced from a reading of the record, considering the wife's needs and the ability of the husband to respond, that the award of alimony should be increased to $230 per month.
NOTES
[1] The ex-husband's argument that C.C. 160 violates various constitutional principles is answered by Whitt v. Vauthier, La.App. 4th Cir. 1975, 316 So.2d 202, writ refused La., 320 So.2d 558.